# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MICK THOMAS RODYSILL,** | |
| Plaintiff, | 4:12CV3110 |
| vs. | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ORDER |
| Defendant. | |

This is an action for judicial review of the Social Security Administration (SSA) Commissioner's final decision refusing to allow waiver of recovery for an overpayment of disability benefits for Mick Thomas Rodysill (Rodysill), despite a finding Rodysill was not at fault. Rodysill argues the Commissioner erred by taking Rodysill's spouse's income, their purchase of a home, and a projected income increase into consideration. Rodysill filed a brief (Filing No. 17) in support of the appeal. The Commissioner filed the administrative record (AR.) (Filing No. 15) and a brief (Filing No. 22) in response. Rodysill filed a brief (Filing No. 23) in reply. Section 405(g) provides for judicial review of a "final decision" made by the Commissioner in a proceeding, such as this, brought under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq.*[1]

## BACKGROUND

On February 5, 1996, at age twenty, Rodysill filed an application for disability benefits based on his inability to work due to diagnosed bipolar disorder (AR. 24). The SSA awarded Rodysill benefits effective January 1, 1996 (AR. 25). The benefits were payable to Rodysill's mother, Marlene Rodysill, who was the representative payee (AR. 262). Although Rodysill did not reside with his mother for the entire period, Rodysill and his mother worked together to report Rodysill's work activity by providing pay stubs to the SSA on a bi-monthly basis (AR. 395-397, 437-446, 544-545). Rodysill has a Bachelor's Degree in art education and works at Lincoln Public Schools as a para-educator (AR. 537, 539). Rodysill stated he was working twenty-five hours each week

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Filing No. 13.

during the 2009-2010 school year, but thought he might work thirty hours each week during the 2010-2011 school year (AR. 540). Rodysill was married in 2007 to Jennifer, who teaches French at a middle school (AR. 246, 538).

On December 2, 2006, the SSA sent Rodysill a notice outlining information forming the basis of a proposed decision concluding Rodysill's disability had ended because he had engaged in substantial work since April 2003 (AR. 147-150). On April 22, 2007, the SSA sent Rodysill a Notice of Disability Cessation, stating that since July 2003 he did not qualify for benefits and he had been overpaid in the amount of $27,039.00 (AR. 163). Rodysill admits he engaged in substantial work activity starting in June 2004 and continuing through April 2007. **See** [Filing No. 17](#) - Brief p. 2; AR. 190. On March 29, 2009, the SSA sent a Notice of Overpayment, changing Rodysill's end date for benefits to June 2004 and noting the overpayment was $21,929.00 (AR. 190).

On April 23, 2009, Rodysill filed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate with the SSA (AR. 193). In support of the request, Rodysill stated he lived with his wife (AR. 196). Additionally, Rodysill listed two savings accounts, two cars, and a checking account as assets totaling $2,810.88 (AR. 196). Rodysill listed his and his wife's monthly household income from employment as $3,815.39, with Rodysill's income comprising $809.72 (AR. 197). Rodysill listed monthly household expenses as $2,844.20, including a $849.09 mortgage payment for an $88,500 home Rodysill and his wife purchased with a $500.00 down payment on September 15, 2009 (AR. 13, 358, 189-199).

On September 30, 2009, the SSA informed Rodysill it could not approve the request for waiver based on the facts contained in the request (AR. 227). The September 30, 2009, letter scheduled a meeting for Rodysill with an SSA employee to review the file and allow document supplementation prior to a final decision (AR. 227). On October 31, 2009, the SSA determined Rodysill was not eligible for waiver because he should have known he was ineligible for benefits he received while engaging in substantial gainful activity (AR. 229-230). Thus the SSA found Rodysill was at fault for the overpayment (AR. 229). Based on Rodysill's household income and expenses, the

SSA proposed he make monthly payments of $300.00 until the SSA recovered the entire overpayment amount (AR. 230).[2]

On November 17, 2009, Rodysill requested review of the October 31, 2009, determination (AR. 233).  In support of the review, Rodysill submitted an April 7, 2010, financial statement listing his household income as $3,540.00, with Rodysill's income comprising $640.00, and household expenses as $3,063.09 (AR. 247-249).  The expense amount included $264.00 a month for weekly colonic treatments and supplements (AR. 249).  An administrative law judge (ALJ) held a hearing on July 14, 2010 (AR. 526-553).  Rodysill failed to provide information that the colonics were medically necessary or prescribed, so the amount was excluded as an ordinary and necessary living expense (AR. 22, 533-534).

On August 25, 2010, the ALJ determined Rodysill was liable for the overpayment, which would not be waived under the circumstances (AR. 23).  Although the ALJ found Rodysill was not at fault for causing the overpayment, she determined recovery of the overpayment would not defeat the purpose of Title II of the Act or be against equity and good conscience (AR. 21-22).  The Appeals Council denied Rodysill's request for review on April 5, 2012 (AR. 7).  Rodysill now seeks judicial review of the ALJ's determination as it represents the Commissioner's final decision.

Rodysill does not dispute the amount of the overpayment.  Instead, Rodysill argues recovery of the overpayment in his case defeats the purpose of Title II of the Act or is against equity and good conscience.  **See** Filing No. 17 - Brief p. 1.  Rodysill contends the ALJ erred by considering (1) Rodysill may receive a raise in pay after the date of the hearing; (2) Rodysill's wife's income; and (3) Rodysill's purchase of a home.  The Commissioner counters the ALJ properly concluded waiver of recovery was inappropriate based on Rodysill's self-reported household income and expenses resulting in an excess sufficient to cover a modest monthly repayment installment.  **See** Filing No. 22 - Response p. 1.

---

[2] The October 31, 2009, letter states the proposed payment amount resulted in a recovery period greater than the "required" three-year recovery period, which would require $609 monthly payments in this case (AR. 230).

3

## STANDARD OF REVIEW

"Federal courts have jurisdiction over social security claims under 42 U.S.C. § 405(g), which permits judicial review of a final decision of the social security commissioner." ***Sipp v. Astrue***, 641 F.3d 975, 979 (8th Cir. 2011). A district court is to affirm the Commissioner's findings if supported by "substantial evidence on the record as a whole." ***Sipp***, 641 F.3d at 781. "Substantial evidence is defined as less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." ***Young v. Astrue***, 702 F.3d 489, 491 (8th Cir. 2013) (internal quotations and citations omitted); **see also** ***Minor v. Astrue***, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on the record as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard"). "If substantial evidence supports the decision, then [the court] may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." ***McNamara v. Astrue***, 590 F.3d 607, 610 (8th Cir. 2010). The individual seeking waiver of overpayment recovery has the burden of proving he is entitled to waiver. ***Sipp***, 641 F.3d at 781.

## DISCUSSION

When an incorrect amount of payment has been made under the disability insurance program, the Act requires the Commissioner to make the proper adjustment or recovery. 42 U.S.C. § 404(a)(1); 20 C.F.R. § 404.501. If the Commissioner made an overpayment, the Act directs the Commissioner to reduce future payments or obtain a refund from either the person who received the benefits or any other person whose wages or income were the basis of the payments to the overpaid person. 42 U.S.C. § 404(a)(1)(A). Even so, the Act prohibits "adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purposes of [the Act] or would be against equity and good conscience." ***Id.*** § 404(b); **see** 20 C.F.R. § 404.506(a). An individual may request waiver of recovery by showing a prohibition applies. **See** 20 C.F.R. § 404.506(c). In determining whether waiver is allowed under the Act, an ALJ relies on the Program Operations Manual System (POMS). POMS are the SSA's internal procedural

4

guidelines and "are entitled to respect as publicly available operating instructions for processing Social Security claims." *Taylor v. Barnhart*, 399 F.3d 891, 897 (8th Cir. 2005) (citation omitted). "While these internal rules do not have legal force and do not bind the Commissioner, courts should consider them in their findings." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004).

The ALJ determined Rodysill was without fault for the overpayment when considering his mental impairments and sincere attempts to comply with the SSA's rules and procedures requiring him to report his work activity to prevent an overpayment of benefits (AR. 21). The ALJ noted "[Rodysill] and his mother provided letters with attached pay stubs to report his work activity, but a work review was not completed until later and the claimant continued to receive his Title II disability benefit payments, which resulted in the overpayment" (AR. 21). The ALJ found Marlene Rodysill's testimony credible about responding to all SSA correspondence, despite conflicting and confusing notices, because her testimony was consistent with the evidence (AR. 21). The ALJ also noted Marlene Rodysill testified Rodysill "purchased a home and incurred other expenses with full knowledge that the overpayment appeal was pending" (AR. 21). Because the ALJ determined Rodysill was without fault, he is eligible for waiver of repayment if adjustment or recovery would defeat the purposes of the Act or would be against equity and good conscience.

**A.   The Purpose of Title II of the Act**

Under the Act, recovery defeats the purpose of Title II if recovery "deprive[s] a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). The regulation explicitly notes the determination, "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id.*

> [O]rdinary and necessary expenses include:
>
> > (1) Fixed living expenses, such as food and clothing, rent,
> > mortgage payments, utilities, maintenance, insurance . . .,
> > taxes, installment payments, etc.;
> > (2) Medical, hospitalization, and other similar expenses;
> > (3) Expenses for the support of others for whom the
> > individual is legally responsible; and

5

> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

*Id.*

Moreover, "recovery will defeat the purposes of title II in . . . situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). Stated another way, "[d]uring recovery, if a person goes into debt to meet his/her ordinary and necessary living expenses, recovery will defeat the purpose of title II at that time." Program Operations Manual System (POMS) GN § 02250.115, available at https://secure.ssa.gov/apps10/poms.nsf/.

The ALJ determined recovery from Rodysill would not defeat the purpose of Title II of the Act because he "does not need substantially all of his household income to meet current ordinary and necessary living expenses" (AR. 22). The ALJ evaluated the April 23, 2009, and April 7, 2010, financial statements, hearing testimony, and medical evidence to make her determination (AR. 22). Specifically, the ALJ noted the financial statements indicate a financial ability to repay the overpayment (AR. 22). The ALJ found Rodysill would not suffer a hardship if required to repay the overpayment because he has been working as a paraprofessional and would likely work additional hours in the future (AR. 22). Additionally, the ALJ recognized Rodysill's comments the overpayment and recovery came as a shock and surprise, but after he received notice he may have to make $300 monthly payments for recovery, Rodysill purchased a house and increased his other expenses (AR. 22). The ALJ acknowledged Rodysill's argument that it was not fair to require his wife to make payments toward the recovery, however the ALJ stated Rodysill's wife jointly committed to the house purchase and other joint expenses (AR. 22). The ALJ credited Rodysill for completing college while receiving disability benefits and having a good response to medication for his underlying impairment (AR. 22).

Rodysill argues the ALJ erred by including Rodysill's wife's income and failing to apportion expenses when determining whether Rodysill had sufficient income to meet his ordinary and necessary living expenses. **See** Filing No. 23 - Reply p. 2-3. The ALJ relied on Rodysill's financial statements and the POMS. Under the guidelines, "[a] husband, wife and any dependents living in the same household comprise a single

financial unit, with all income and resources available to each member of the household." POMS GN 02250.130(A)(1). Similarly, the ALJ "[c]onsider[s] income to a spouse and dependents as being available to the person requesting waiver." POMS GN 02250.120(A)(1). Ultimately, when determining whether recovery defeats the purpose of the Act, the ALJ must evaluate "the circumstances of the household of which the person is a member." POMS GN 02250.130(A)(1). Applying these guidelines, the ALJ combined Rodysill and Jennifer Rodysill's incomes then subtracted their joint expenses to conclude Rodysill's financial resources were sufficient to cover more than ordinary and necessary needs.

Rodysill contends the ALJ was required to apportion Rodysill's income and expenses separate from Jennifer's. **See** Filing No. 23 - Reply p. 2. Rodysill relies on a guideline directing the ALJ to "[a]ttribute to each *dependent* member a pro-rata share of the family's ordinary and necessary living expenses. Attribute those expenses that are not shared by all household members only to the person who incurred them." POMS GN 02250.130(B)(2) (emphasis added). The guideline provides an example showing how a child's income (social security benefits only) and pro-rata share of household expenses are evaluated. *Id.* Rodysill misapplies the guidelines, which do not label either the husband or the wife as a dependent. In any event, regulations applicable to the Act provide guidance about determining when an individual is a dependent. **See, e.g.,** 20 C.F.R. §§ 404.360 to 404.366 (benefits for child dependent on insured person); 20 C.F.R. § 404.370(f) (dependent parent). The regulations are not dispositive of the issues here but do provide a relevant and objective methodology. Dependency is based upon whether an individual is receiving regular contributions for support from another person. 20 C.F.R. § 404.366. These contributions must be "large enough to meet an important part of your ordinary living costs" or one-half of your support. *Id.* Specifically, one-half support means:

> The [other] person provides one-half of your support if he or she makes regular contributions for your ordinary living costs; the amount of these contributions equals or exceeds one-half of your ordinary living costs; and any [other] income . . . you have available for support purposes is one-half or less of your ordinary living costs.

20 C.F.R. § 404.366(b).

7

Rodysill suggested the ALJ apportion his income and expenses separate from his wife's income and expenses. See Filing No. 23 - Reply p. 2; AR. 532-535, 547. Rodysill states that considering his pro-rata share of "income and expenses at best Rodysill would be left with $136.17." See Filing No. 23 - Reply p. 2. He goes on to argue this amount is far too low to require him to make $300.00 monthly payments. *Id.* More importantly, however even under his calculations he has funds remaining at the end of each month after his share of expenses are paid from his income. Accordingly, he cannot show he is dependent on his wife for support because she does not make regular contributions comprising one-half or even an important part of his ordinary living costs. Since Rodysill cannot show his dependency, the ALJ was not required to "[a]ttribute to each ***dependent*** member a pro-rata share of the family's ordinary and necessary living expenses" pursuant to POMS GN 02250.130(B)(2). No error has been shown based on the ALJ's reliance on the household income and expenses.

Similarly, the ALJ did not err by considering Rodysill's purchase of a home and possible future increase in income. The ALJ's comments indicate these considerations supported her findings without giving them undue weight. The ALJ did not include Rodysill's future income in her financial calculations but considered the information for the basis that monthly payments to the SSA would not impose a hardship because he had stable employment as his income was then sufficient and was likely to increase (AR. 22). The ALJ considered the home purchase with the increase in Rodysill's other expenses as an indication Rodysill intentionally increased his expenses with full knowledge he may have to repay the overpayment (AR. 22). Additionally, despite the increased debt and expenses "[Rodysill] and his wife still . . . have some income each month that could be used for repayment" (AR. 22).

Based on Rodysill's financial statements, a repayment plan to recover the benefit overpayment would not require Rodysill to go into debt to meet his ordinary and necessary living expenses. The ALJ did not err by considering (1) Rodysill would likely receive increased income after the date of the hearing; (2) Rodysill's wife's income; and (3) Rodysill purchased a home. Based on the record before the court, substantial evidence supports the ALJ's decision recovery would not defeat the purpose of Title II.

**B.     Equity and Good Conscience**

As specifically provided in the applicable regulations, "[r]ecovery of an overpayment is against equity and good conscience . . . if an individual-- (1) Changed his or her position for the worse . . . or relinquished a valuable right . . . because of the overpayment itself . . ." 20 C.F.R § 404.509(a). Furthermore, "[t]he individual's financial circumstances are not material to a finding of against equity and good conscience." 20 C.F.R § 404.509(b).

The ALJ determined, "[r]ecovery of the overpayment would not be against equity and good conscience because the claimant has not changed his position for the worse or relinquished a valuable right. The claimant's financial circumstances are not material to this finding" (AR. 22). The ALJ made no other determinations specific to this inquiry.

Rodysill provides no evidence or argument he changed his position or relinquished a valuable right in reliance on the overpayment. Rodysill argues the ALJ erred by failing to consider his wife was not living in his household at the time of the overpayment. **See** Filing No. 23 - Reply p. 3-5. For this reason, Rodysill contends his wife should not be liable (and, more importantly, her income should not be considered) for recovery. *Id.* Rodysill relies on 20 C.F.R § 404.509(a)(2), which provides, "[r]ecovery of an overpayment is against equity and good conscience . . . if an individual-- . . . (2) Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment." Additionally, Rodysill relies on ***Groseclose v. Bowen***, 809 F.2d 502 (8th Cir. 1987).

In ***Groseclose***, the Commissioner sought recovery from the father for overpaid child's insurance benefits paid to his daughter based on his retirement benefits. ***Groseclose***, 809 F.2d at 503-04. The father lived in a different state from the daughter and had no knowledge of the daughter's receipt of benefits. *Id.* The court found, "it difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments." *Id.* at 506.

Subsection (a)(2) does not apply to Rodysill. Recovery is sought from Rodysill, not his wife. Rodysill is the beneficiary of the overpayment and received the funds. Rodysill's wife was not the beneficiary, nor was she a person whose wages or income

9

were the basis of the payments to the overpaid person. The Commissioner does not seek recovery from her. Nevertheless, Rodysill's wife's income is included in his current household income for purposes of determining his ability to repay the overpayment as explicitly required under the regulations, as discussed above. Such result is not against equity and good conscience because she is not personally liable for the repayment. Rodysill received the overpayment and was notified such benefits may be subject to recovery prior to his marriage. Inequity does not result from one spouse providing financial support for another spouse to maintain a household. This is particularly true under the present circumstances where, as discussed above, Rodysill's income covers his pro-rata share of expenses. Accordingly, the ALJ permissibly found overpayment recovery would not be against equity and good conscience in this case.

Substantial evidence supports the ALJ's decision denying waiver in this case.

**IT IS ORDERED:**

The Commissioner's decision is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

Dated this 1st day of April, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge